IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JACK MATTINGLY, KAY MATTINGLY, MIKE HEALY TRUST, f/k/a MIKE HEALY, d/b/a MCR INVESTMENTS, C.E. GARRETT, and G&W, a Partnership, AND ON BEHALF OF SIMILARLY SITUATED INDIVIDUALS AND ENTITIES, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10-CV-565-TCK-PJC |
| EQUAL ENERGY, a/k/a ALTEX ENERGY CORPORATION, a/k/a ALTEX RESOURCES CORPORATION, a Texas Corporation, SPECIAL ENERGY CORPORATION, a Texas Corporation, NEW DOMINION, LLC, an Oklahoma Limited Liability Company, and SCISSORTAIL ENERGY, LLC, a Delaware Limited Liability Company, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand (Doc. 49).

**I.     Background**

Plaintiffs filed this class action in the District Court of Creek County, State of Oklahoma, claiming that they were underpaid for their share of the value of minerals produced from Oklahoma wells in which they have a royalty or overriding royalty interest. Specifically, Plaintiffs alleged the following claims: (1) breach of contract - improper royalty payment; (2) breach of duty to market gas; (3) accounting and failure to timely pay; (4) accounting, fraud, and violations of the Oklahoma Revenue Standard Act; (5) fraud and misrepresentation - failure to disclose as required by law; and (6) tortious breach of duty/contract - punitive damages. Defendants thereafter removed Plaintiffs'

Petition to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (*See* Doc. 2 (Notice of Removal filed by Equal, New Dominion, and Scissortail); Doc. 39 (Notice of Removal filed by Special Energy, which adopts and incorporates Notice of Removal filed by Equal, New Dominion, and Scissortail).) Plaintiffs now seek to remand this matter pursuant to CAFA's discretionary exception, found in 28 U.S.C. § 1332(d)(3) ("Section 1332(d)(3)").

## II. Relevant Law Under CAFA

CAFA "extends the subject matter jurisdiction of the federal courts to encompass putative class actions in which at least one plaintiff is diverse from one defendant and where the amount in controversy exceeds $5 million." *Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1313 (10th Cir. 2007); 28 U.S.C. 1332(d)(2) ("Section 1332(d)(2)") (outlining requirements for federal jurisdiction under CAFA). "CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts." *Coffey v. Freeport McMoran Copper & Gold, Inc.*, 581 F.3d 1240, 1243 (10th Cir. 2009). "Although CAFA's language favors federal jurisdiction over class actions, Congress did not give federal courts jurisdiction over *all* class actions," as CAFA contains certain mandatory and discretionary exceptions. *Coffey v. Freeport McMoran Copper & Gold, Inc.,* 623 F. Supp. 2d 1257, 1262 (W.D. Okla. 2009) (citing *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) and *Johnson v. Advance Am.*, 549 F.3d 932, 938 (4th Cir. 2008)); *see* 28 U.S.C. § 1332(d)(3),(4), & (5) (providing various exceptions to CAFA jurisdiction).

At issue in this case is the exception found in Section 1332(d)(3), which "provides a discretionary vehicle for district courts to ferret out the 'controversy that uniquely affects a particular locality to the exclusion of all others.'" *Preston v. Tenet HealthSys. Mem'l Med. Ctr., Inc.*, 485 F.

3d 804, 812 (5th Cir. 2007) (citing *Evans*, 449 F.3d at 1164). Specifically, Section 1332(d)(3) provides as follows:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under [Section 1332(d)(2)] over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--
>
> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3)(A)-(F). "While [Defendants] must establish under CAFA that the amount in controversy and minimal diversity requirements are met," Plaintiffs bear the burden of proving an exception to jurisdiction under Section 1332(d)(3). *Coffey*, 623 F. Supp. 2d at 1263 (internal citations omitted); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) (noting that the "party seeking remand bears the burden to prove an exception to CAFA's jurisdiction"); *Evans*, 49 F.3d at 1164 ("[W]hen a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, as in this case, we hold that the party seeking

remand bears the burden of proof with regard to that exception."); *Seat v. Farmers Group, Inc.*, No. CIV-06-0309-F, 2006 WL 1285084, at *2 (W.D. Okla. May 5, 2006) ("[U]nder [Section 1332(d)(3) or Section 1332(d)(4)] plaintiff has the burden to demonstrate that the criteria of those statutes are met before either of those exceptions to the court's exercise of federal jurisdiction can apply."). Plaintiffs need not satisfy all the above-listed factors, however. *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008). Instead, courts have held that a balancing test should be applied, taking into consideration the "totality of the circumstances." *Id.*

Here, the parties do not dispute that the underlying requirements of CAFA jurisdiction, as outlined in Section 1332(d)(2), are met. Rather, Plaintiffs move to remand this matter pursuant to Section 1332(d)(3), arguing that the factors outlined therein support exercise of this Court's discretion to decline jurisdiction.[1]

### III. Analysis of Section 1332(d)(3) Factors

There does not appear to be any dispute regarding the prerequisites to application of Section 1332(d)(3) — namely, that (1) greater than one-third but less than two-thirds of the proposed class are citizens of Oklahoma[2] and (2) the primary defendants are citizens of Oklahoma. Indeed, Steve

---

[1] Although Plaintiffs' Motion to Remand mentions the mandatory exception found in 28 U.S.C. § 1332(d)(4), Plaintiffs' reply brief clearly states that Plaintiffs are not seeking remand pursuant to such exception.

[2] While the parties do not dispute that more than one-third and less than two-thirds of the proposed class are citizens of Oklahoma, the parties do dispute the manner in which the percentage of Oklahoma residents should be calculated. Specifically, Plaintiffs cite preliminary discovery responses received from Defendants, concluding that "the total percentage of Oklahoma residents for all Defendants, as a group is 43.21%," but that the percentage "rises to 52.21% if all of the 'unknown residents' are removed from the formula." (Pls.' Supp. Br. in Support of Reply 2.) Defendants dispute Plaintiffs' removal of the "unknown residents" from the formula, contending that it is inaccurate to entirely ignore those class members with unknown addresses. The Court finds Defendants' contention well-founded, as Plaintiffs have

McDaniels ("McDaniels"), Director of Gas Accounting at Scissortail, conducted an analysis of the residences of royalty and overriding royalty interest owners having interests in the Oklahoma wells placed at issue by Plaintiffs' Petition. As a result of this analysis, he concluded that 43% of those royalty interest and overriding royalty interest owners have Oklahoma mailing addresses, 40% have mailing residences outside of Oklahoma, and 17% have not reported their mailing addresses to Scissortail. (*See* McDaniels Aff., Ex. 4 to Notice of Removal at 2.) Further, the Petition reflects that all Defendants have their principal places of business in Oklahoma and are residents of Oklahoma. (*See* Pet. ¶¶5-8.) The Court therefore turns to the remaining factors under Section 1332(d)(3).

A. <u>Matters of National or Interstate Importance</u>

The Court finds that the first discretionary factor weighs in favor of remand, as the claims at issue do not involve matters of national or interstate importance. Rather, Defendants have their principal places of business in Oklahoma and are citizens of Oklahoma; the acts giving rise to Plaintiffs' claims occurred in Oklahoma; and the subject oil and gas wells are all located in Oklahoma. *See Elsea v. Jackson Cnty., Mo.*, No. 10-0620-CV-W-ODS, 2010 WL 4386538, at *5 (W.D. Mo. Oct. 28, 2010) (concluding case did not involve matters of national or interstate importance when defendants were citizens of Missouri, alleged harms occurred in Missouri, and acts giving rise to plaintiffs' claims occurred in Missouri).

B. <u>Whether Plaintiffs' Claims Will be Governed by Oklahoma Law or the Law of Other States</u>

The Court finds that the second discretionary factor is neutral because the Court is without sufficient information, at this stage of the proceedings, to conduct a complete choice of law analysis.

---

failed to provide any support for the assertion that the Court can simply ignore the citizenship of those class members for whom no residence is stated.

Although Defendants summarily maintain that Plaintiffs' fraud and breach of contract claims "will be governed by the laws of numerous states other than Oklahoma," (Resp. to Mot. to Remand 10), the choice of law analysis is not as straightforward as Defendants imply. Specifically, with regard to the fraud claim, pursuant to Section 148 of the Restatement (Second) of Conflict of Laws ("Section 148") and comments thereto, a court must consider multiple factors in conducting a choice of law analysis. These factors include where plaintiff suffered harm; where plaintiff took actions in reliance on defendant's representations; where defendant made the allegedly false representations; and whether, after analysis of additional factors, another state has a more significant relationship to the occurrence and the parties. Restatement (Second) of Conflict of Laws § 148;[3] *see Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 626 (Okla. 2003) (applying Section 148 in determining what

---

[3] Section 148 states as follows:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where the plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

law will apply to class action plaintiffs' fraud claim); *Weber*, 243 P.3d at 6 (same). While the Court is unable to undergo a full analysis of these factors based on the current record and arguments before it, the Court rejects Defendants' suggestion that Plaintiffs' fraud claim will be "governed by the laws of numerous states other than Oklahoma" simply because the proposed class includes residents from states other than Oklahoma. *See Weber*, 243 P.3d at 6 (analyzing Section 148 and concluding that Oklahoma law would govern class members' fraud claim even though some members were citizens of other states). Indeed, analysis of Section 148 in light of certain facts alleged by Plaintiffs – namely, that the activity underlying the fraud claim (the production of minerals, calculation of amounts to be paid, and the mailing of inaccurate representations) occurred in Oklahoma – *could* result in application of Oklahoma law.

Similarly, the Court is unable to undergo a choice of law analysis regarding the breach of contract claim, as information regarding the contents of the relevant contracts and where such contracts were to be performed is not before the Court. *See* Okla. Stat. tit. 15 § 162 (stating "a contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place it is made"). This factor is therefore neutral in determining whether the Court should decline jurisdiction pursuant to Section 1332(d)(3).

  C. <u>Whether the Class Action Has Been Pleaded in a Manner to Avoid Federal Jurisdiction</u>

Nothing in the record indicates that Plaintiffs intentionally pleaded the case in a manner to avoid federal jurisdiction, and Defendants do not make such an allegation.

  D. <u>Whether the Action was Brought in a Forum with a Distinct Nexus with the Class</u>

Members, the Alleged Harm, or the Defendants

This action relates to interests in real property located in Oklahoma and the proposed class members all own interests in such Oklahoma property. The proposed class members therefore have a strong connection to Oklahoma even if they are not all Oklahoma residents. Further, Defendants are citizens of Oklahoma, and the underlying actions giving rise to this suit took place in Oklahoma. In light of these facts, the Court concludes that a distinct nexus exists between Oklahoma and the class members, the alleged harm, and Defendants. *See Martin v. Lafon Nursing Facility of the Holy Family, Inc.*, 548 F. Supp. 2d 268, 279 (E.D. La. 2008) (finding distinct nexus between action and Louisiana when conduct underlying the action took place in Louisiana and defendant was Louisiana corporation with principal place of business in Louisiana).

E.  Number of Oklahoma Citizens in Proposed Class Compared to Other States

Plaintiffs represent, without dispute from Defendants, that no other state has greater than 15% of the members of the proposed class. (*See* Supp. Br. in Support of Reply Br. 2-3 (citing discovery responses received from Defendants) (stating that 14.28% of proposed class members are citizens of Texas, 7.03% of proposed class members are citizens of California, and other represented states have less than 1% of proposed class members).) The fifth factor therefore points to remand because there are more citizens from Oklahoma than any other state and the citizenship of the remaining class members is dispersed among other states. *See Sorrentino*, 588 F. Supp. 2d at 359 (finding fifth factor favored remand when plaintiffs had shown that "43.6% . . . of the sample proposed class members are citizens of New York," there were "more citizens in the State of New York than in any other singular State[,] and the citizenship of the remaining class members [was] dispersed among several states").

F.  Whether Previous Class Actions Were Filed in Three Year Period Preceding This Action

Neither party has raised the issue of a class action being filed during the three-year period preceding the filing of this class action asserting the same or similar claims on behalf of the same or other people.

On balance, after considering the above-listed factors and the totality of the circumstances, the Court finds that the discretionary exception to CAFA jurisdiction has been established. Therefore, Plaintiffs' Motion to Remand (Doc. 49) is GRANTED and the Court remands this action to the District Court of Creek County, State of Oklahoma.

**IT IS SO ORDERED this 1st day of August, 2011.**

_____
**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**